[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for personal injury brought by the tenant of an apartment house against the co-owners thereof based upon an alleged fall on an icy exterior stairway. The plaintiff maintains that while in the exercise of due care she was caused to slip and fall on an icy outside stairway due to the negligence and carelessness of the defendant in failing to keep and maintain the premises in a reasonably safe condition in that the defendant allowed a substantial quantity of snow and/or ice to form on the premises and remain there for a considerable period of time when the defendant knew or should have known of said condition.
In their answer to the second amended complaint the defendants denied the allegations of negligence. Further they enter a special defense in which they state that if the plaintiff was injured on the premises of the defendants such injury was substantially caused by her negligence in that she failed to make reasonable use of her facilities, she failed to be watchful of her surroundings and general conditions prevailing, and she knew or should have known of the conditions then and there existing but failed to use reasonable care for her own safety commiserate with such conditions.
The following are the facts found by this Court: On or about January 14, 1999 the defendants were the owners and managers of a twelve tenement apartment house at 167 Barker Street in the south end of Hartford.
The apartment house was on the south side of Barker Street which runs CT Page 3071 east/west. The plaintiff's apartment was one of two apartments facing the street and was on the east side of the building. There is a driveway to a parking lot on the east side of the building which had been cleared and a concrete sidewalk on the west side of the building which also had been cleaned. The tenants at the front of the building had access to a hallway directly behind their apartments that ran from the driveway to the sidewalk. There were three steps from the landing at the east entrance and one step at the west.
Before trial it was stipulated that the defendants were the owners of the property and were responsible for snow and ice removal for the apartment in question but they did not do this personally but rather had delegated the snow and ice removal to another.[1]
The plaintiff, a young mother of 27 years old, with a four month old baby, worked every day on a part time basis at Bradlees from 6:00 AM until 10:00 AM. The plaintiff's husband, Jose Trejo, drove her to work every morning. She did not have a license to drive an automobile because of an eyesight problem. On the morning of January 14, 1999, the husband as was his custom, left his apartment, walked through a hall, a short distance to an outside doorway, onto an outside landing and stairway consisting of three steps. This stairway was covered with approximately an inch of old ice and an inch of old snow. He proceeded down the stairs to a cleared driveway leading to the rear of the house and a parking lot from which he moved his car back down the driveway to a place near the stairway. At approximately 5:40 AM his wife proceeded through the same door onto the landing. He helped her down the stairs she being quite stout, weighing over 200 lbs. and only five feet tall, and helped her into the car. It is not clear who carried the baby but they arranged to have the baby in the car. He then drove her to work. Her usual time for leaving the house was approximately 5:40 a.m.
At this point there was no precipitation at that location. Weather reports from Brainard Field which is not more than a mile or two away showed nothing more than a trace of precipitation through the morning to the early afternoon, but there is no evidence that there was any actual precipitation at 167 Barker Street during the period covered by the facts in this case.[2] The snow and ice on the landing and the stairway had accumulated during a storm which had happened approximately a week before. Although the driveway had been cleared, the "out of cab work", such as the clearing, sanding and/or salting of the stairs and landing had not been done.
This accident happened on January 14 which was a Thursday. On the previous Tuesday, because the outside door was jammed by ice, the plaintiff's husband complained to the landlord who told him it would be CT Page 3072 taken care of and referred him to his son who in turn gave him a small amount of ice melt. This was placed by the husband on the landing near the door for the purpose of freeing the ice so the door could be opened. There was no evidence of any other melting of this snow and ice cover on the landing and the stairs.
Plaintiff's husband took care of the baby and slept from the time he returned to the apartment until he went to pick up his wife at approximately 10:00 AM. He and the wife and the child went to a bank and then to a post office and then shopping in West Farms Mall. They returned home at approximately 1:45 PM. They had approximately six bags of groceries in the car. The husband stopped the car near the landing. The plaintiff left the car, went up the stairs to the landing, unlocked the door, turned around to return to the husband, calling to him to be careful because of the conditions, and then fell backwards striking her head on the concrete landing and/or stairs, causing a large gash in the back of her head. Her husband ran into the house, got a towel and attempted to contain the bleeding and then took his wife to Hartford Hospital where five staples were used to close the wound.
After release from the hospital she was taken home and experienced nausea, vomiting, extreme headaches and blurred vision requiring a second hospital visit at which time a brain CAT Scan was taken. She also had pain in her back. She treated with Dr. Berland, a neurologist, and Dr. Nodine, a physical therapist, for several months being monitored for complaints of headaches, neck and back pain and pain radiating from her left leg. She had a second CAT Scan of the lumbosacral area revealing an objective finding of a central disc bulge at L5-S1 for which Dr. Berland set a 5% permanent partial disability of the low back on August 19, 1990.
On March 2, 2000, Dr. Berland rated Mrs. Rivera with a 5% permanent partial disability to her head because of persistent headaches and memory loss. She has sustained daily headaches and persistent short term memory problems and ongoing back pain causing problems with her household duties and inability to enjoy walking and dancing.
She has also had occasional incontinence caused by back pain extending down her leg.
In the opinion of this Court the proximate cause of these injuries was the negligence of the defendants in that they had adequate notice and failed to have the landing and stairs properly cleared of ice and snow or made safe by the application of sand and salt. In the opinion of the Court the conditions existing on the landing and stairs was "an accident waiting to happen", and that sooner or later somebody would fall on the CT Page 3073 ice since it was used regularly by three out of four families.
The medical expenses incurred by the plaintiff amount to $8,158.00, the loss of wages $735. The Court considers a fair value for past non-economic damages to be $10,000 which is a conservative value covering her pain and initial trauma and treatment and all treatment through her diagnosis of maximum improvement and discharge by Dr. Berland on March 2, 2000. Considering the permanent partial disability ratings to her back and head relating to headaches and loss of memory and her life expectancy of approximately 48 years, the Court places a value of $24,000 for future pain and suffering and future impairment, for a total of $42,893 in damages proximately caused by the negligence of the defendant.
In the opinion of this Court the plaintiff was also negligent in bringing about the injuries to herself. She was fully aware of the conditions on the landing and stairs and traversed this same area at least twice a day since the storm which deposited the ice and snow. She had an eyesight problem; she was a very heavy woman for her height and was aware of the need for extra care under the conditions prevailing at the time. She also had access to another exit to a cleared walk although it was probably more inconvenient. For some unknown reason she failed to exercise due care when she should have been able to foresee a danger to herself.
Taking into account these facts, the Court is of the opinion that the percentage of her comparative negligence is 45%. Thus the Court must subtract 45% or $19,301.85 from $42,893.00 for the contributory negligence of the plaintiff which was a proximate cause of her own injuries. The balance is therefore $23,591.15.
Judgment may enter for the plaintiff in the amount of $23,591.15.
Hale, J.